# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WIGBERTO LUGO-MENDER, as the duty appointed Trustee in the liquidation of EURO PACIFIC INTERNATIONAL BANK, INC.,** | |
| *Plaintiff*, | |
| v. | |
| **QENTA, INC.; PETER D. SCHIFF; BRENT DE JONG; ET AL.,** | **CIVIL NO.**: 25-1501 (PAD) |
| *Defendants.* | |
| **EURO PACIFIC FUNDS SCC LTD.; EURO PACIFIC SECURITIES, INC.; EURO PACIFIC CARD SERVICES LTD.; AND GLOBAL CORPORATE STAFFING LTD.** | |
| *Parties in Interest.* | |

### PETER D. SCHIFF'S RESPONSE TO "EMERGENCY MOTION REQUESTING HEARING FOR PROVISIONAL REMEDIES, INCLUDING TEMPORARY RESTRAINING ORDER, TO SECURE SATISFACTION OF JUDGMENT

### I. INTRODUCTION

Rarely does a litigant confront a motion that is both patently frivolous and, at least in its requested relief, entirely justified. Yet this is precisely such a case. Plaintiff Wigberto Lugo-Mender ("Lugo-Mender" or "Trustee") has filed what can only be described as an audacious "Emergency Motion Requesting Hearing for Provisional Remedies, Including Temporary Restraining Order, to Secure Satisfaction of Judgment," seeking to restrain the movement of certain assets allegedly in the possession of Defendant Qenta, Inc. ("Qenta"). (*See* Docket No. 2.) The supposed "urgency" of the motion conveniently overlooks the Trustee's own three-month inaction after receiving Qenta's "Notice of Termination of Purchase and Assumption Agreement,"

through which Qenta purported to misappropriate tens of millions of dollars belonging to Euro Pacific International Bank, Inc.'s ("EPB") customers.

The Trustee's claim of "likelihood of success on the merits" disintegrates under even minimal scrutiny. He filed this suit alleging a conspiracy to commit fraud knowing full well that Mr. Schiff never conspired with Qenta or engaged in any improper scheme, yet he advanced it anyway. That fact alone undermines the integrity of the entire action. The Complaint is completely without any legal merit: it fails to allege an "enterprise," a "pattern" of racketeering, or a viable conspiracy pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; it attempts to plead fraud without meeting the heightened standards of Rule 9(b); and it hinges on conspiracy allegations that are not only false, but knowingly so. The Trustee has stitched together a sensational narrative with no legal or factual foundation. So, the question must be asked, does he truly seek justice for EPB's customers, or is this lawsuit just a reckless stunt?

By contrast, Defendant Peter D. Schiff ("Schiff"), whom the Trustee now accuses of "conspiring" with Qenta, has for months been doing the very thing the Trustee claims to want: safeguarding customer assets from Qenta's dissipation. Schiff first sought a temporary restraining order in Puerto Rico to freeze Qenta's precious-metal and cash holdings. That motion was denied solely on jurisdictional grounds, not for lack of evidence. Schiff then re-filed in New York, obtaining a detailed TRO restraining Qenta from dissipating approximately $50 million in precious metals, $19 million in cash, and other Euro Pacific assets. The Southern District of New York later vacated the TRO on removal, not because Schiff's evidence failed, but because the court held the Trustee, not Schiff as sole shareholder, was the proper party to pursue the relief.

The Trustee's silence about this history is telling. Not only is it highly suggestive of an insidious motive driving the filing of this action, but it also reflects the flaws in the Trustee's approach to EPB's liquidation. A fiduciary genuinely committed to protecting customer funds would have stepped directly into Schiff's litigation, adopted the already-issued TRO, and pressed forward against Qenta. Instead, the Trustee ignored Schiff's repeated warnings, squandered months of opportunity, and now burns customer money on a headline-grabbing but frivolous RICO case and an overbroad provisional-remedies motion. That is not zealous stewardship; it is a dereliction of fiduciary duty and a gross misuse of customer funds.

Still, because Mr. Schiff's sole concern is the welfare of EPB's customers, he cannot oppose the provisional relief itself. But the Trustee's motion, like his Complaint, remains legally deficient, procedurally reckless, and factually misleading.

## II.    ARGUMENT

### A. The motion does not seek relief against Mr. Schiff.

The Trustee's motion seeks to attach and enjoin "all EPIB customer monies and assets … under Defendants' control." However, the motion does not mention Mr. Schiff or highlight any of the Complaint's (false) allegations regarding his conduct. (*See generally* Docket No. 2.) Moreover, the Trustee Declaration's concedes that after June 30, 2022 OCIF appointed a Trustee and Mr. Schiff "no longer held authority as a corporate officer." Docket No. 1-1, ¶7. The Verified Complaint and Declaration likewise fail to allege that Mr. Schiff is in possession of any customer property. The Trustee identifies no account, vault, or asset in Mr. Schiff's custody. The alleged misappropriation and current possession of customer assets are attributed to Qenta and its affiliates. Without a nexus between Mr. Schiff and any attachable property, Rule 64 and Puerto Rico Rule 56 simply do not authorize attachment, garnishment, or a TRO against him.

## B. Mr. Schiff Sued Qenta to Recover Customer Assets.

While the Trustee alleges that Mr. Schiff conspired with Qenta to defraud EPB's customers, the facts tell a different story. The Trustee waited sixty-seven (67) days before seeking any relief against Qenta. In contrast, Mr. Schiff acted within six (6) days of receiving notice of Qenta's intention to terminate their agreement with EPB, filing a motion to prevent the dissipation of approximately $80 million in customer funds. He submitted a detailed emergency motion and supporting affidavit outlining how Qenta, after assuming custody of these assets under a Purchase & Assumption Agreement, unilaterally terminated the deal and refused to return the funds. (*See* 24-cv-1511 (CVR), Docket No. 151.)

Mr. Schiff documented Qenta's attempt to retain half of the precious metals through a "discount" scheme and highlighted the Trustee's failure to take responsibility for the assets. He requested the Court to freeze all assets transferred to Qenta, order a full accounting, prohibit misleading communications to customers, segregate the assets, and allow expedited discovery to trace and secure the property. (*See id.*, Docket No. 151-2.) However, the Court denied the motion, reasoning that Mr. Schiff was seeking relief against a third party, Qenta, who was not a party to the action. (*See id.*, Docket No. 152.)[1]

Undeterred, Mr. Schiff filed a "Verified Petition for Temporary Restraining Order and Preliminary Injunction in Aid of Arbitration" in the Commercial Division of Westchester County, New York, just eight days after the Puerto Rico District Court denied his initial request. (*See* Exhibit 1, pp. 3–8.) His petition detailed Qenta's failure to obtain necessary regulatory approvals prior to closing the agreement, its unilateral termination of the deal, and its unlawful retention of approximately $50 million in precious metals, $19 million in cash, mutual funds, and

---

[1] Mr. Schiff later submitted an amended motion, which was denied. He also filed a Motion for Reconsideration, which the Court likewise denied. (*See id.*, Docket Nos. 153, 154, 156, and 157.)

subsidiaries belonging to EPB's customers. Judge Linda S. Jamieson granted the TRO, finding that Mr. Schiff's petition reflected a likelihood of success on the merits, and issued an order to show cause to Qenta. (*See id.*, pp. 1–2.)

Qenta promptly removed the case to the U.S. District Court for the Southern District of New York, where Judge Kevin Castel affirmed the TRO. (*See* Exhibit 2.) Following a hearing, the Court vacated the TRO on August 13, 2025, not due to any finding of misconduct or conspiracy by Mr. Schiff, but because, as a shareholder, he lacked standing to act on behalf of EPB or the Trustee. (*See* Exhibit 3.) The Court's decision effectively invited the Trustee, who indisputably has standing to move forward, to pursue the same remedies in a more appropriate procedural posture.

The Trustee goes even further in advancing a false narrative. In his Verified Complaint, he claims to have "confirmed that the silver inventory remains under the custody of a third-party custodian in Singapore." (Docket No. 1, ¶38.) What the Trustee fails to disclose is that it was Mr. Schiff, acting entirely on his own initiative and without any assistance from the Trustee, who ensured that Qenta did not gain control of this customer-owned silver. Contrary to the Trustee's misleading claim that he recovered the silver, it was Mr. Schiff who successfully intervened to protect over $10 million worth of silver that the bank had previously transferred to Qenta's control. Mr. Schiff demonstrated to the custodian that the silver remained the property of the bank, which led to the custodian transferring control of the silver back to the Trustee. Mr. Schiff immediately notified the Trustee of this development and urged him to act swiftly to contact the custodian. (*See* Exhibits 4, 5, and 6.) Mr. Schiff then arranged for the silver to be released to the individual customers who own it. However, that release has been delayed solely due to the Trustee's refusal to authorize the distribution of these metals to their rightful owners. It is wholly implausible to

suggest that Mr. Schiff was conspiring with Qenta while simultaneously taking decisive action to recover and return customer-owned assets. If Mr. Schiff had truly been conspiring to misappropriate the $10 million in silver, he would not have gone to great lengths to secure its return to the bank.

It defies logic to suggest that someone engaged in a conspiracy to misappropriate assets would simultaneously build a meticulous evidentiary record, file emergency motions across multiple jurisdictions, and ultimately succeed in obtaining a federal injunction freezing the very assets he is accused of misappropriating. Mr. Schiff did exactly that. Throughout this process, Mr. Schiff consistently urged the Trustee to join him in pursuing Qenta. It is unprecedented, indeed, implausible, for a supposed conspirator to sue his alleged co-conspirator in two separate courts while actively encouraging regulatory authorities and the Trustee to investigate and/or act against that same party. This conduct is not consistent with fraud; it is consistent with someone acting in good faith to protect customer assets. Furthermore, the Trustee's decision to shy away from litigation after a standing issue arose, despite Mr. Schiff's repeated requests to continue, calls into question whether the Trustee is truly acting in the best interests of EPB's customers. Rather than advancing a legal strategy that had already yielded emergency relief, the Trustee inexplicably reversed course and now brings a sensational and baseless RICO action against the very individual who took meaningful steps to safeguard those assets.

**C. The Trustee's motion fails to show a probability of success on the merits.**

To grant a preliminary injunction, a district court must consider four factors: "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015); *see also Voice of*

*the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). Among these factors, the likelihood of success on the merits is the most significant. As the First Circuit has explained, this element "weighs most heavily in the preliminary injunction analysis." *Russomano v. Novo Nordisk Inc.*, 960 F.3d 48, 53 (1st Cir. 2020) (citing *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996)) (emphasis ours). Accordingly, "[t]he since qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.* (1st Cir. 2002); see also *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 92 (1st Cir. 2020) ("We hasten to add that these four elements are not of equal prominence in the preliminary injunction calculus. The most important is whether the movant has demonstrated a likelihood of success on the merits—an element that we have described as the 'sine qua non' of the preliminary injunction inquiry.").

The Trustee's Complaint is dead on arrival. Because it is fundamentally defective, he cannot begin to show any probability of success on the merits sufficient to justify the extraordinary relief he seeks. Most glaringly, Mr. Schiff's documented lawsuits against Qenta, the very party he is now accused of conspiring with, obliterate the Trustee's false narrative of a fraud conspiracy. One does not spend months fighting to enjoin and freeze $80 million in assets if one's aim is to "swindle" that same money. The Trustee's silence on Mr. Schiff's extensive litigation against Qenta, across hundreds of pages of filings, is as telling as it is misleading.

Moreover, the Trustee claims Mr. Schiff conspired with Qenta to commit fraud on EPB's customers, yet nowhere in the Complaint does he identify a single misrepresentation of fact made by Mr. Schiff—or by anyone else—prior to the critical moment when customers were deciding

whether to continue with Qenta or opt out. That moment is the only plausible window in which fraudulent inducement could have occurred, as it was the point at which customers were asked to make a financial decision. If fraud had occurred, it would have been through misrepresentations designed to influence the choice to opt-in to banking with Qenta thereby putting more assets in the hands of the alleged conspirators.

Instead, the only alleged misrepresentations attributed to Mr. Schiff appear in Paragraph 84 of the Trustee's declaration. (*See* Docket No. 1-1, ¶84.) Importantly, the Trustee acknowledges that these statements were made *after* Qenta had terminated the Purchase and Sale Agreement, which means they were made *while* Mr. Schiff was actively suing Qenta to recover the full amount of EPB's assets. At the risk of beating a dead horse, it is illogical to suggest that Mr. Schiff was simultaneously conspiring with Qenta while litigating against them to claw back customer funds.

Moreover, the statements the Trustee identifies as "misrepresentations" are not deceptive in nature, they are calls to action intended to help customers recover their property. For example:

- "The APA never closed and as such He agreed with the termination."
- "Silver and metals pertain to the bank, not to Qenta."
- "The Trustee bears fiduciary responsibility for mutual fund holdings transferred to Qenta."
- "The Trustee has the silver, with a written authorization from him this can be transferred to customers. As such instructed customers to request that the silver be transferred to Schiff Gold."
- "Opt-In customers should write the trustee via email to get their claims paid as He has all the information on their accounts."

These are not fraudulent statements, they are calls to action for customers to assert their rights and press the Trustee to act to safeguard their property. If Mr. Schiff were engaged in a

8

conspiracy to defraud, it makes no sense that he would encourage victims to pursue claims against his alleged co-conspirators.

In short, the Trustee's Complaint is utterly without merit. It does not plead the indispensable elements of a RICO claim—no "enterprise," no "pattern" of racketeering activity, no viable conspiracy. Its fraud allegations fall far short of pleading any fraudulent misrepresentation, much less doing so in conformity with Rule 9(b)'s heightened pleading standard. Most importantly, its conspiracy theory is not just false but knowingly false. The Trustee's claims lack both factual and legal support and, accordingly, do not have a likelihood of success.

## III.     CONCLUSION

The Trustee's motion seeks to enjoin assets currently under Qenta's control, assets that undeniably belong to EPB's customers, but it does not seek relief against Mr. Schiff, nor does it identify any customer property in his possession. As such, there is no legal basis under Rule 64 or Puerto Rico Rule 56 to impose attachment, garnishment, or injunctive relief against Mr. Schiff. More importantly, the Trustee's broader narrative of conspiracy collapses under the weight of the actual record. Mr. Schiff has spent months actively litigating against Qenta in multiple jurisdictions, seeking to freeze and recover the very assets the Trustee now claims were misappropriated through collusion. He obtained a temporary restraining order in state court, which was affirmed by a federal judge, and only vacated due to a procedural standing issue, not because of any wrongdoing. These efforts are wholly inconsistent with the Trustee's allegations and, in fact, demonstrate Mr. Schiff's commitment to protecting EPB's customers.

To be clear, Mr. Schiff supports the principle of enjoining and recovering customer assets currently held by Qenta, which legally still belong to the bank. There is no basis in law or equity

for Qenta to terminate an agreement to purchase assets and assume liabilities, then demand a refund of its $500,000 down payment and walk away with a $50 million windfall at the bank's expense. To prevent this unjust enrichment, a TRO must be awarded to freeze all assets that belong to the bank, given the high probability that Qenta will dissipate those assets before the bank's claims can be properly adjudicated. That relief, however, must be pursued through accurate, legally sound claims, not through sensational and baseless accusations. The Trustee's Complaint fails to meet the threshold for a likelihood of success on the merits, lacking the essential elements of a RICO claim and falling short of Rule 9(b)'s heightened pleading standard. Mr. Schiff defers to the Court's discretion on the appropriate remedy but respectfully submits that the Trustee's current approach undermines—not advances—the interests of EPB's customers.

**WHEREFORE**, Defendant respectfully requests the Court take note of his response and issue any relief it deems just and proper.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico on this 29th day of September 2025.

**WE HEREBY CERTIFY**: Today we have electronically filed the foregoing document using the CM/ECF system which will send a copy and notification of filing to all counsel of record.

**DMR Law**
Capital Center Bldg.
Suite 1101
San Juan, PR 00918
Tel. 787-331-9970

*s/Javier F. Micheo Marcial*
Javier F. Micheo Marcial
USDC-PR No. 305310
j.micheo@dmrpr.com